Pérez, Plaintiff and Appellee, *v.* Gandía, Defendant and Appellant.

Appeal from the First District Court of San Juan in an Action for Damages.

No. 2920.—Decided November 27, 1923.

Lease — Repair of Property — Negligence — Damages. — When the owner of a building has knowledge that it is in a dangerous condition and negligently fails to repair it he is liable for the damages that may be caused by its collapse.

Id.—Id.—Id.—Id.—Evidence.—Proof that the dilapidated building which caused the damage belonged to the defendant may be established by other means than the deed of acquisition recorded in the registry.

Id.—Id.—Id.—Id.—Id.—The evidence in this case showed that the dilapidated condition of the house was the cause of its collapse.

The facts are stated in the opinion.
*Mr. M. Gaetán Barbosa* for the appellant.
*Mr. C. J. Torres* for the appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

The complaint in this action reads in part as follows:

"1. That August 12, 1921, the defendant was the owner of house No. 137 San Agustín St., Puerta de Tierra, of the Municipality of San Juan, and the house was divided into living rooms, one of which was rented to Conrado Rosario, with whom the plaintiff was and is living in concubinage.

"2. That the defendant had been notified by the health authorities prior to August 12, 1921, that his house No. 137 San Agustín St., Puerta de Tierra, was in an unsafe condition.

That on August 12, 1921, the said house collapsed because of such condition and through the exclusive negligence of its owner, the defendant.

"4. That when the said house collapsed the plaintiff was lawfully in the room where she was living, and she was pregnant. She suffered an injury on the left part of the thorax and other injuries to her hips which confined her to her bed from August 12 to September 10, 1921, during all of which time she had to be attended by a physician.

"5. That although demand has been made upon the defendant for an indemnity to the plaintiff for her mental and physical suffering due solely and exclusively to the collapse of the house in which she lived and through the fault and negligence of the defendant, he has refused to indemnify her.

"6. The plaintiff estimates the damages suffered by her at the sum of $1,500."

The time allowed in the summons expired and the defendant entered no appearance; therefore, he was declared to be in default, but later the court permitted him to defend. First he demurred on the ground of lack of cause of action. The demurrer was overruled and thereupon he answered as follows:

"First.—He denies each and all of the allegations of the complaint.

"Second.—As a special defense the defendant specifically alleges:

"That on several occasions the defendant demanded of the plaintiff that she vacate the room referred to in the complaint for the reason that the house was in an unsafe condition and notwithstanding the several demands made by the defendant upon all of the tenants

of the said house, the plaintiff did not vacate the said room within the time allowed her for that purpose, although the plaintiff knew of her own personal knowledge that the house was in an unsafe condition for habitation.''

The issue being thus joined, the case was tried and after the evidence was examined the court rendered judgment against the defendant for the sum of $300 and the costs.

The defendant appealed to this court, assigning in his brief two errors on the part of the district court, as follows: (1) in overruling the demurrer, and (2) in weighing the evidence.

In discussing the first assignment the appellant maintains that the complaint does not allege the existence of any valid contract between the plaintiff and the defendant, and that in case the existence of a lease contract could be inferred, the payment of rent is not alleged, nor that the lessee notified the lessor that it was necessary to repair the leased house.

We think that the assignment is without merit. The liability of the defendant towards the plaintiff does not spring from any contract entered into directly with her. The complaint alleges the existence of a lease contract between the defendant, the owner of the house, and Conrado Rosario. The allegation that the plaintiff ''was and is living in concubinage'' with Rosario was unnecessary. Rosario had a right to receive guests in the house which he rented as a dwelling. Any person could enter it in the ordinary course of business and to all of them the owner was responsible. It was the duty of the owner to keep the house in a habitable condition and if with knowledge of its unsafe condition he negligently failed to repair the defects, he is liable for the damages that may have been caused thereby. His liability arises from the quasi-contract referred to in section 1803 of the Civil Code, as follows: ''A person who by an act or omission causes damage to an-

other when there is fault or negligence shall be obliged to repair the damage so done.''

The foregoing is sufficient for the conclusion that allegations of payment of rent and of notice by the lessee to the lessor of the existing defects were not necessary. Knowledge of the defects by the lessor by reason of the notice given to him by the health authorities was duly alleged, as was also his negligence in failing to repair the house.

Nor was the second error committed. In our opinion the evidence makes out a stronger case than that presented by the complaint.

It is urged that it was not proved that the defendant was the owner of the house. That the defendant was the owner was to a certain extent admitted in his answer; but if this were not enough, the plaintiff's oral evidence showed facts sufficient to warrant that conclusion. It is not absolutely necessary to prove ownership in a case of this kind by producing the deed of acquisition recorded in the registry of property.

It is also insisted that it was not shown that the bad condition of the house caused its collapse, or that the defendant was negligent. Rosario testified that the house ''was in such an unsafe condition that it collapsed during the night.'' Dominga Pérez testified that ''on the twelfth of that month at about 10.30 p. m. while she was in the kitchen the house collapsed.'' The health inspector testified that ''in the month of June he notified Gandía that he should repair the whole house because it was in very bad condition, but he did nothing. * * * That he filed a complaint against him. That on several instances he had to complain against him because of the condition of those houses. * * * That most of the notices were with regard to this very house, because it was in a very bad condition. * * * That the floor of the house was about two meters high on the side fronting the railroad track and as the wood was

rotten the house fell and it is on the ground; that there is nothing to support it; it is on the ground." Furthermore, one of the witnesses for the defendant, Pedro Gandía, Jr., the attorney in fact of the defendant, said "that he ordered a notice to be posted on the house saying that the house was dangerous and advising the tenants to move."

As regards the injuries sustained by the plaintiff as a result of the collapse of the house and the amount of the damages, the evidence is more than sufficient to support the judgment.

And in so far as concerns the notice by the owner to the tenants alleged as a defense, it will suffice to say that the evidence was conflicting and no passion, prejudice, partiality or manifest error on the part of the court in weighing it has been shown.

The appeal must be dismissed and the judgment

*Affirmed.*

Justices Aldrey, Hutchison and Franco Soto concurred.
Mr. Justice Wolf took no part in the decision of this case.